UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD TURAY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HENRY RICHARDS, PhD., *et al.*, <br><br> Defendants. | CASE NO. C91-0664RSM <br><br> ORDER GRANTING MOTION TO DISSOLVE INJUNCTION |

### **I. INTRODUCTION**

This matter comes before the Court on defendants' Motion to Dissolve Injunction. (Dkt. #2047). At stake is the dissolution of a history-making injunction, and the conclusion of years of litigation between the parties. The Court does not make this decision lightly, and has spent considerable time reviewing the parties' briefing, as well as the prior decisions made in this case over the last 15 years. However, having reviewed defendants' motion, plaintiffs' responses, and the remainder of the record, this Court now finds that the injunction should be DISSOLVED and this case DISMISSED for the reasons set forth below.

### **II. BACKGROUND**

The Court will not repeat the lengthy procedural and factual background of this case. The parties, the Court and the public are by now well-versed in what has taken place over the course of this litigation. However, The Court sets forth a brief history to set the context for the instant motion.

ORDER
PAGE - 1

Plaintiffs are residents of Washington's Special Commitment Center ("SCC"), who were civilly committed as "sexually violent predators." Defendants are the superintendent and clinical director of the institution in their official capacities as representatives of the State. SCC resident Richard Turay, now proceeding *pro se*, initially brought this action, claiming that the conditions of his confinement violated his civil rights. A trial was held in 1994, and the jury found that the SCC was not providing Turay and other residents constitutionally adequate mental health treatment. Turay received nominal damages, and the Honorable William L. Dwyer, United States District Judge, issued an injunction requiring the SCC to bring the treatment program into compliance with constitutional requirements. The injunction was broad, and directed defendants to adopt and implement a plan for hiring and training competent therapists; implement strategies to rectify the lack of trust between the residents and staff; implement a general treatment program for residents, including involvement of spouses and family members and all other generally accepted therapy components; develop individual treatment plans for each resident to measure progress; and provide an expert in treatment of sex offenders to supervise and consult with treatment staff.

Over the course of many years, this Court monitored compliance with that injunction. In addition, to effectively conduct that monitoring, the Court appointed a special master, reviewed periodic compliance reports, and held numerous evidentiary hearings. Meanwhile, another group of SCC residents also brought a court action seeking damages and injunctive relief relating to the confinement conditions, which was subsequently combined with the Turay case.

In October 1998, Judge Dwyer conducted an evidentiary hearing pertaining to the injunctive relief issues. In November 1998, the Court issued a lengthy order, finding that the SCC had still not complied with constitutional requirements, and set forth a detailed list of items remaining to be addressed. Those items included, *inter alia*, additional staff training at the SCC; provision of a coherent and individualized treatment program for each resident; adequate provision for participation

ORDER
PAGE - 2

by the residents' families in rehabilitation efforts; construction of a separate treatment-oriented facility; elimination of the routine strip searches of SCC residents following every visit; elimination of the monitoring of residents' telephone calls and the bar on outgoing calls; negotiation with McNeil Island Correction Center ("MICC") management to obtain better meal and activity schedules; improvement to the treatment environment; and the initiation and implementation of program oversight both by an internal review process and by an external body. Defendants appealed from that Order, but the Ninth Circuit Court of Appeals affirmed, holding that there had been no error in the Court's conclusion that the SCC was still not providing the adequate treatment that is constitutionally required for civilly-committed persons. *Sharp v. Weston*, 233 F.3d 1166, 1172 (9th Cir. 2000). The Court of Appeals also found that the Court did not abuse its discretion with respect to the scope of the Order. *Id.* at 1174.

In November 1999, Judge Dwyer held defendants in contempt for failing to take all reasonable steps within their power to comply with the injunction. As a result, contempt sanctions began accruing, and continued to accrue for the next several years.

In June 2004, after several additional compliance hearings and other proceedings, the Honorable Robert S. Lasnik, United States District Judge, determined that:

> 4. With one exception, . . . defendants' activities during the past year generally involved the selection of alternatives based on their impact on treatment and that those decisions fall well within professional standards. Under the direction of qualified and experienced professionals, the SCC has continued to improve and develop the vocational and educational opportunities available to residents, provides treatment to Special Needs residents that offers an opportunity to improve conditions for which they are confined, and has developed and implemented a plan to address deficiencies related to progress notes and treatment plans. Defendants have substantially complied with the requirements of the injunction with regards to vocational programming, Special Needs programming, and charting requirements [.]
>
> 5. The one area where defendants' activities do not accurately reflect professional judgment involves the development and funding of an off-island LRA. Circumstances outside the control of the SCC professionals have delayed the development of an off-island SCTF despite the acknowledged need for such a

ORDER
PAGE - 3

facility to guarantee minimum professional treatment for those residents who qualify. (Dkt. #1906 at 7-8).

Judge Lasnik then purged the 1999 contempt order, found that the accrued sanctions need not be paid, and narrowed the injunction to the development and funding of off-island LRAs and the administration of the LRA protocol. Judge Lasnik also directed that "[p]rovided there is no significant 'backsliding,' the Court will dissolve the injunction when defendants have completed or substantially completed construction of an off-island SCTF such that its ultimate readiness for occupancy is assured." (Dkt. #1906 at 10). The Ninth Circuit Court of Appeals has affirmed Judge Lasnik's Order. *Cunningham v. Weston*, 180 Fed. Appx. 644, 2006 U.S. App. LEXIS 11941 (9th Cir. May 9, 2006).

Since that time, the parties have submitted stipulated facts pertaining to the development and construction of an off-island LRA. Indeed, there is no dispute that such facilities now exist, and are currently located in both Pierce and King counties. Both facilities currently house residents, and are assisting those residents with plans to transition back into the community.[1]

Defendants now move for the complete dissolution of the injunction, arguing that the only remaining issue has been resolved. Plaintiffs, both represented and *pro se*, ask the Court to find that there has been significant backsliding and continue to monitor compliance with the 1998 Order.

## III. DISCUSSION

A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction. *See Sharp*, 233 F.3d at 1170; *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)). Here, defendants note that it is undisputed that they have met the last requirement of the injunction, and argue that such fulfillment

---

[1] The undersigned District Judge has toured the King County facility with the presence of plaintiffs' and defendants' counsel.

mandates dissolution and dismissal of this action. Thus, this Court is required to examine the existing SCTF and LRA protocol to determine whether the developments are so significant as to warrant an end of court supervision. *Sharp*, 233 F.3d at 1170. Further, this Court acknowledges that it should show deference to the judgment exercised by a qualified professional, in order to minimize the interference by the federal judiciary with the internal operations of state institutions. *See Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). "A decision made by a professional is presumptively valid, and 'liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Sharp*, 233 F.3d at 1171 (citation omitted).

Plaintiffs, both represented and *pro se*, do not appear to dispute that defendants have complied with the final area of the injunction identified by Judge Lasnik. Instead, plaintiffs focus on the issue of "backsliding," arguing that this Court must maintain supervision over the SCC because there continues to be inadequate oversight and there has been real and harmful backsliding. Plaintiffs assert that because of that backsliding, defendants are no longer in compliance with the 1998 Order.

The Court has already determined that, while plaintiffs have demonstrated that some backsliding has occurred with respect to the treatment program at issue in this case, and even assuming plaintiffs could prove all of the allegations raised in their briefs, those allegations would not rise to the level of a Constitutional violation requiring this Court to reinstate the injunctive relief previously granted by this Court. (Dkt. #2096). The Court further addresses that decision here.

As the Ninth Circuit has explained, the appropriate legal standard for analyzing the constitutionality of SCC's treatment program is set forth in *Ohlinger v. Watson*, 652 F.2d 775, 778 (9th Cir. 1980). *Sharp*, 233 F.3d at 1172. In *Ohlinger*, the Court of Appeals held that the Fourteenth Amendment Due Process Clause requires states to provide civilly-committed persons with access to

ORDER
PAGE - 5

mental health treatment that gives them a realistic opportunity to be cured and released. *Id*. Because the purpose of confinement is not punitive, the state must also provide the civilly-committed with "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg*, 457 U.S. at 322.

Plaintiffs first focus on what they characterize as the declining participation in treatment at the SCC. Plaintiffs argue that there has been significant decline between 2005 and 2006, and conduct a point by point review of the Inspection of Care Committee's ("IOCC") yearly treatment reports for those years. (Dkt. #2062 at 5-8). Plaintiffs further highlight Dr. Robert Briody's concerns about the adequacy of the treatment being provided. However, the Court may not focus solely on one professional opinion in complete disregard of others. Indeed, in *Youngberg*, the U.S. Supreme Court cautioned the courts reviewing treatment programs, explaining that "the Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." *Yougberg*, 457 U.S. at 321. In this case, neither the 2006 IOCC report, nor Dr. Briody's testimony identifies substantial departures from minimally accepted standard across the profession, especially in light of the testimony provided by other professionals highlighting the ongoing efforts by the SCC program managers to improve the program, the underlying reasons for choices to discontinue certain aspects of the program, such as the Resident Advisory Council, efforts to make changes designed to encourage participation in the treatment program.

The *pro se* plaintiffs continue to focus on the past rulings of this Court, alleging that nothing has really improved, and that their commitment has become more punitive than it was previously. Plaintiffs focus on many of the same treatment program issues highlighted by the represented plaintiffs. Plaintiffs also place great weight on the recent Ninth Circuit Court of Appeals' decision in *Hydrick v. Hunter*, 449 F.3d 978 (9th Cir. 2006). In *Hydrick*, the court addressed a challenge brought by

ORDER
PAGE - 6

approximately 600 civilly-committed people, and those awaiting commitment, at Atascadero State Hospital pursuant to California's Sexually Violent Predator's Act. *Hydrick*, 449 F.3d at 986. In particular, the court was reviewing an order from the district court denying defendants' motion to dismiss based on qualified immunity. Because of the posture of that decision, much of the analysis is inapposite to the instant case. In *Hydrick*, the court was determining whether certain rights were clearly established under federal law under a qualified immunity analysis. That is much different than what this Court is charged with on the instant motion. Thus, this Court does not place the same reliance on *Hydrick* as urged by plaintiffs.

Plaintiffs also urge the Court to ensure that adequate external oversight of the SCC exists before judicial oversight ends. Plaintiffs argue that the current oversight mechanisms are not working and cannot be expected to be successful if there are not additional changes. The Court has twice determined that defendants have satisfied the oversight requirement. Further, the 2005 IOCC report concluded that the oversight mechanisms "meets expectations in all areas." (Dkt. #2064, Ex. 1). Thus, the Court is not persuaded that inadequate oversight mechanisms have denied any of the plaintiffs constitutionally inadequate treatment.

Having concluded that none of plaintiffs' allegations, even if accepted as proven, persuade the Court that significant backsliding has given rise to constitutional violations, the Court finds no basis to deny defendants' injunction. As noted above, the parties have submitted stipulated facts demonstrating that the last area remaining under the injunction has been successfully met. Accordingly, the Court now dissolves the injunction in its entirety and finds that judicial oversight is no longer necessary in this action.

The Court had asked the parties to address any preclusive effect this Order may have on future cases in this Court. Having reviewed the parties' positions, the Court declines to make any specific determination, and notes only that nothing in this Order prevents plaintiffs from filing new allegations

ORDER
PAGE - 7

under new case numbers. The parties will then address those allegations in the normal course of litigation.

This case has been troublesome to the Court in that there seems to be no right answer, and no good fix for the situation these plaintiffs face at the SCC. The Court can do its best to ensure adequate treatment and facilities, but ultimately must succumb to the limitations of the law. As the U.S. Supreme Court has noted, injunctions against the state are not intended to operate in perpetuity. *Board of Ed. of Okla. City Public Schools v. Dowell*, 498 U.S. 237, 248 (1991). Indeed, this Court has previously recognized that federal courts are subject to highly restrictive rules of law, and are cautioned not to impose injunctions against the state unless necessary and, even then, to make the injunction as narrow as possible. (Dkt. #1906 at 8). Accordingly, the Court must conclude that the time has come to dissolve the injunction. The Court agrees that defendants have worked long and hard to meet the constitutional requirements identified by this Court, and there is no longer any basis for the Court's continued oversight.

### III. CONCLUSION

Having reviewed the record, the Court hereby ORDERS:

(1) Defendants' Motion to Dissolve the Injunction (Dkt. #2047) is GRANTED. The Court adopts the stipulated facts set forth in defendants' motion, and accepts the factual representations made in the subsequent periodic compliance reports with respect to the SCTF and LRA protocol. (Dkts. #2047, #2113, #2114, #2115, #2116 and #2117). Accordingly, the Court DISSOLVES the injunction in its entirety, and this case is now CLOSED.

1    (2)  The Clerk SHALL forward a copy of this Order to *pro se* plaintiffs and to all counsel of
2 record.
3    DATED this 23rd day of March, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 9